2 So.2d 182

**MORA et al. v. RUFFIN.**

No. 34750.

April 28, 1941.

R. C. Gamble, of Mansfield, for appellants.

Craig & Magee, of Mansfield, for appellee.

O'NIELL, Chief Justice.

C. T. Ruffin, who is the defendant in this suit, sold to Antonio R. Mora and O. T. Brightwell, who are the plaintiffs, an oil and gas lease on a tract of land having an area of only three acres and a very small fraction of an acre. The price was $3,000 and was paid by Mora and Brightwell to Ruffin in cash. At the same time, and as a part of the transaction, the parties signed a collateral agreement by which Ruffin obligated himself to obtain from the department of conservation a permit for Mora and Brightwell to drill on the small area of land covered by the lease. At that time a well, known as the Reding well, was being drilled by other parties so near to the three-acre tract that it was understood that the lease on the three-acre tract would have little or no value if the Reding well when completed should be a nonproducer. It was stipulated, therefore, in the collateral agreement that Ruffin should obtain the permit for Mora and Brightwell to drill on the three-acre tract before the Reding well would be completed, otherwise Mora and Brightwell would have the option for thirty

days after the completion of the Reding well to surrender the lease and demand the return of the $3,000 and of $50 which they advanced to Ruffin to pay the fee which the department of conservation would charge for the drilling permit. Ruffin failed to obtain a permit for Mora and Brightwell to drill on the three-acre tract, because, according to an established rule of the department of conservation, drilling permits were not allowed on an area less than ten acres. The Reding well was completed and abandoned as a dry hole on August 16, 1937. The contractor was persuaded to try again to make a success of the well and he resumed work and continued working on the well until August 20, when it was recognized that the well was completed and was a dry hole. Mora and Brightwell then tendered to Ruffin an assignment of their lease on the three-acre tract and demanded a return of the $3,050. He contended that Mora and Brightwell had consented verbally, on August 13, 1937, to accept in lieu of a drilling permit the sum which it would have cost him to obtain the permit, which he said would have been about $500. Hence Ruffin refused to return more than $550 of the $3,050 which he had received from Mora and Brightwell. Mora and Brightwell then went before a notary public and signed a notarial act surrendering the lease to Ruffin, and, after tendering the instrument to him and making formal demand for a return of the $3,050, they brought this suit to recover the amount. Ruffin pleaded in answer to the suit the alleged verbal agreement, and tendered to the plaintiffs $550 plus $10.93 interest and costs accrued to the date of the

tender. After hearing the evidence the judge maintained the defense and gave the plaintiffs a judgment for the amount which the defendant had tendered, with legal interest on $550 from the date of the tender, and rejected the remainder of the plaintiffs' demand at their cost. They are appealing from the decision.

It is admitted in the briefs on both sides that the only question in the case is the question of fact, whether Mora and Brightwell agreed, in their conversation with Ruffin on August 13, 1937, to accept $500 in lieu of a drilling permit, and to waive whatever right they had to a return of the $3,000 for Ruffin's failure to obtain the permit. The only persons who were present besides the three parties to the conversation were the father-in-law and an eighteen-year-old son of the defendant. He relies upon their testimony as being sufficient corroboration of his own testimony that the plaintiffs agreed to accept $500 in lieu of a drilling permit and to waive whatever right they had to claim the $3,000. The plaintiffs both testified emphatically that they did not make any such agreement or waiver of their right to claim the $3,000.

The burden of proof was on the defendant to establish his plea that the plaintiffs agreed verbally to accept $500 in lieu of a drilling permit and to waive their right to claim the $3,000 for the defendant's failure to obtain the permit. It is declared in the Civil Code, in article 2232, that he who claims an obligation on the part of another must prove it, and "on the other hand, he who contends that he is exonerated, must prove * * * the fact

which has produced the extinction of the obligation." The reason for that is stated in Powell v. Hayes et al., 31 La.Ann. 789, thus: "Renunciations of rights are not to be presumed."

Our conclusion from the evidence in this case is that the testimony of the defendant is not sufficiently corroborated by that of his father-in-law and that of his son; besides which there are some undisputed facts which weaken the testimony of the defendant and corroborate that of the plaintiffs. One of the most important of these facts is that the defendant knew, at the time when he had the conversation with the plaintiffs on August 13, that it was impossible for him to obtain a drilling permit on so small an area of land. He applied to the department of conservation for the permit immediately after transferring the lease to Mora and Brightwell, on July 17, and was informed by a letter from the director of the minerals division on July 20, that the rules of the department forbade the granting of a drilling permit on an area less than 10 acres. He testified that afterwards he requested a friend, who was a state senator, to request the Governor to ask the department of conservation to grant the permit. On August 9 Ruffin went from his home in Mansfield to the office of the department of conservation in Shreveport, in an effort to obtain the permit; and on the next day he went to the office in New Orleans and in a personal interview with the director of the minerals division tried to persuade him to grant the permit. He spent two days in New Orleans trying all the time to obtain the permit, returning to

Mansfield on August 13. When he arrived at his place of business, that afternoon, his son handed him a letter from the director of the minerals division, dated August 12, confirming the refusal of the department to grant a drilling permit on an area less than 10 acres, or except for the drilling of a well in the centre of any tract having an area of only 10 acres. He had just read the letter, and was talking to his father-in-law about the trip to New Orleans, when Mora and Brightwell came and commenced the conversation by asking him what he thought of the Reding well, and he replied that he thought it was a dry hole. Mora or Brightwell then asked Ruffin if he had succeeded in obtaining the drilling permit, and he replied that he had not obtained it yet but that he could obtain it. His father-in-law testified that Ruffin then told Mora and Brightwell that it would cost him "maybe two, three, four or five hundred dollars" to get the permit, and that Ruffin asked them if they would not rather "have part of the money back" than to have a drilling permit. Ruffin testified that Mora and Brightwell replied that they would rather have the money which it would cost him to obtain the drilling permit than to have the permit, and that his response was that he would quit trying to obtain the permit. The testimony of Ruffin's father-in-law falls short of proving that there was an agreement that Ruffin should be discharged of his obligation by paying to Mora and Brightwell the sum which it would have cost Ruffin to procure the drilling permit. The father-in-law merely gave his opinion on that subject, over the objection of the attorney for the plaintiffs, thus: "Their

attitude [meaning the attitude of Mora and Brightwell] seemed to me that it was satisfactory, and that they would be willing to accept part of the money for the cost of the permit, two, three, four or five hundred dollars." It is not probable that Mora and Brightwell would have agreed to accept · in full satisfaction of Ruffin's obligation the sum .which it would have cost him to procure a drilling permit, if Mora and Brightwell did not know whether the sum would be "two, three, four or five hundred dollars". The testimony of the defendant's son does not sustain his plea. The young man testified that his father asked Mora and Brightwell if they would want a drilling permit if the Reding well should be a dry hole, and that they replied that in that event they would not want a permit; that the boy's father then "said it would take some money to get the permit, and he said 'I'd rather pay it to you fellows' "; that Brightwell said: "Sure, I would rather have the money"; and "Daddy said: 'I will discontinue all efforts to get a permit.' " The declaration of Mora and Brightwell that they would not want a permit to drill on the three-acre tract if the Reding well should be a dry hole meant nothing more than that they would avail themselves of their right to demand the return of their $3,000 if the Reding well should be completed before the defendant obtained a permit for Mora and Brightwell to drill on the three-acre tract, and if the Reding well when completed should be a dry hole.

There are two other important facts which affect the defendant's testimony. One of these facts is that he failed, and under cross-examination refused, to explain how he intended to spend more than the regular fee of $50 to obtain a drilling permit. He admitted that he had no thought of trying to pay for the services of any official; and he admitted that he had no intention of making a pooling arrangement with an adjacent leasehold to make up an area of ten acres. In fact he admitted that making a pooling arrangement for an area of ten acres would not be a compliance with his obligation to obtain a permit for Mora and Brightwell to drill on their three-acre lease. The other important fact in this case is that the defendant did not offer to settle with Mora and Brightwell at the conclusion of his conversation with them on the 13th of August, only three days before the Reding well was completed. His only explanation of that was that he did not know then exactly what a drilling permit would cost. That explanation is not consistent with the statement of the defendant that it was understood then that he would discontinue his efforts to obtain a drilling permit.

The judgment appealed from is amended so that the principal amount is increased to three thousand and fifty dollars ($3,050), bearing interest at five per cent per annum from August 31, 1937. As thus amended the judgment is affirmed. The defendant is to pay all of the costs of this suit.